Please call the case. Case number 18-4260, James Dimora v. USA. Argument not to exceed 15 minutes per side. Mr. Mills, you may proceed for the appellant. Thank you. David Mills on behalf of James Dimora, I along with Phil Kushner represent Mr. Dimora in this appeal. I've reserved three minutes for rebuttal, Judge Thapar, if that's all right. That's perfect. Thank you. Thank you. Your Honors, the Jimmy Dimora case and the Jimmy Dimora trial really comes down to one thing and that's what was his mindset when he got all these things of value? What was his intent? Was it criminal or was it lawful? Was he trying to play by the rules? And both the errors in this case go to that fundamental point. There are two fundamental aspects to understanding Jimmy Dimora's mindset when he got all these things of value. What's number one? Well, he's a public official. So what does he do when he gets these things of value? And I don't care if it's a stake or a trip to Vegas or anything else. He's got to do something really important in the beginning. He's got to disclose. He's got to comply with the disclosure requirements, which he does. What's the second most important thing for the jury when they're assessing his intent and mindset? Well, when he gets all these things of value, he does number one, he discloses. And he's also very aware. He's been an official for a long time. He knows he's allowed to do things for the people who gave him things of value. He's allowed to make phone calls. He's allowed to check on bids. He can get people involved with the right people in the county for multimillion dollar loans. He can do all these things, but he has to do one thing. He has to draw a line in the sand, and he cannot trade official actions for those things of value. He can't trade a vote for a thing of value. So he draws a line in the sand. Mr. Mills, let me ask you then specifically about count 22 and 23. So in counts 22 and 23, this involves Mr. and I'm sorry if I butcher it, Mr. Malarm. No, Vander Brothers Construction. And my understanding is the only thing that he did in exchange for value that the government He voted to approve three contracts, and he voted to appoint Mr. Malarngo's son as to be the project inspector. So do you concede then that that count must stand under that? Because the jury clearly decided, and it's not in front of us, his state of mind, obviously, on this. But to the extent you're arguing it is, the jury conceded, or I'm sorry, decided that he had criminal intent when he voted in those counts. So why wouldn't that be sufficient, even under your theory? Right. The reason it's not is because the jury was told that all of these informal things he did could count. And specific to Malarango, in the closing argument, the government said that Mr. Damora was involved with causing, quote unquote, or helping to have the son obtain the job. But am I wrong? And is the evidence wrong that he voted to appoint him to be the postal inspector? Did he or did he not? No, the evidence is not wrong. You're correct about that. But this is consistent with a number of the allegations here where you do have, just like this count, you do at the end of the day have some official actions of James Damora, of course. And this is an example of the vote. The problem is the government emphasizes that they don't have to rely on things like the votes or the appointment. They also emphasize to the jury that you don't have to tie that. You can tie the fact that in this particular example, he, quote, caused or helped him to get hired. And so the question the jury way, I thought the only evidence and I'm sorry, I'll stop interrupting you on this count, but not to beat a dead horse, but I thought the evidence of the way he caused it was he voted and that was what was charged in the indictment. And that was what was proven to the jury. There is that evidence, but there's also evidence that he was involved in informal ways beforehand to sort of prevent him. So, okay. So, but ultimately the vote is the capsule of that. Can I, can I get you off that? I have one other question and I'll be quiet, which is in habeas review, you ordinarily have to show, or you always have to show that the error was a violation of the constitutional right. But I couldn't see in your brief, where are you made out that the instructions deprive him of a constitutional right? I don't see it on the, I didn't see it in your brief on the counts, meaning the official acts. And I didn't see it on the ethics report. Is that just an oversight or why was that? No, it's not an oversight. And there's two responses to that. The case law, I think, shows that when you have a fundamental error along the lines of what's shown here, both with the intent problem and especially with the official acts error, you have a fundamental trial error that can be reviewed and should be reviewed in a 2255 post-conviction proceeding. What I would add in addition to that, as we explained at the end of the briefs, is that these combined into what's effectively an entire due process error. And that's what's happening in McDonnell. And the reason is, it really boils down to the jury insists, the government insisting and closing argument that you can convict this person for lawful conduct. That's a due process violation. When you combine the errors, you have something that is entirely reviewable. I would also add the government never suggested this is not a reviewable type error by the court, neither of these cumulative errors. This goes to Mr. Damore's entire defense. He disclosed and he drew that line. He didn't do official acts and none of that could be presented. What's worse, the opposite was told to the jury about Hope. The jury was told he never disclosed. The whole case was the government eliciting 60 times, he never disclosed. Well, that's not really true. The most important evidence was excluded from them. Number two, did he draw that line in the sand where he did all these things that are lawful, all these phone calls, all these meetings, arranging things about federal funding, all these things that are lawful. And the government told the jury, don't worry about the votes. He did all these other things that are unlawful. That's the fundamental error. It is a due process violation, but I don't think you have really to formally lay that out. And I would note again, the government hasn't suggested this is not a reviewable. This is a classic 2255 petition, especially in light of... But you agree for us to grant relief, it must amount to a violation of a constitutional right. I'm not sure it has to go so far as to be a violation of constitutional right. So if you're wrong about that, do you lose? No, because this is a fundamental violation of due process. Jimmy DeMora... So you are saying it's a violation of a constitutional right, the right to due process. That's right, Judge Larson. It is a violation of constitutional right. I was just making the point that it's conceivable that this court has authority to correct errors that maybe don't rise to that level. This is a violation of constitutional right because if you look at the truth of the case about Mr. DeMora, like I say, it's just two things really. Did he disclose? Did he do lawful things for all these people? And the jury was told the opposite of both. He never disclosed. And every single lawful thing he did, all the phone calls, you look at what the government calls the schemes. And they're really not schemes. He didn't do any lawful action with regard to any feedback. Yeah, I'm sorry, Mr. Goss. Ms. Ford, can you mute yours? It seems like when that occurred, you went off mute. I don't know if you did it or we did it. There we go. Okay, Mr. Mills, try again. All right. Thank you. So you had a minute. I'm sorry, Mr. Mills. Ms. Mitchell, can you add a minute to his time, please? Thank you. Go ahead, Mr. Mills. Thank you, Judge. Yeah. So we're not talking about small errors. We're talking about Jimmy DeMora's right to present his entire case. And if a lawyer like me or someone else could tell this jury the truth that he disclosed and the truth that all these things he did were lawful when he made all these phone calls. Mr. Mills, I thank you very much for that thoughtful point. I think we understand it. Can I ask you another question, which is you concede, right? We review this under Brecht. Yes. Right. Okay. And so can you explain to me just under Brecht and its progeny, if you know what grave doubt means? In other words, if we are just, just as Breyer said, equipoise, if we are less than an equipoise, in other words, if we're more, if we believe it's more likely than not that the jury convicted based on a lawful reason, then it seems to me we affirm the conviction under O'Neill. Am I right about that or wrong? And explain to me why. Maybe the best answer is to give my sense of what I think Brecht instructs this court. Okay. That's fair. So the case law, and I think it's been consistent since Kodiakos for about 75 years, is that you have to decide did these errors, and again combined here, have a substantial injurious effect on the verdict? In other words, did they affect the jury's outcome? And I think your point about doubt and equipoise is on that question. If you have doubt or you're in equipoise about whether it affected the jury's outcome here, then you've met the harmless error standard and you have to overturn. And in this case, you know, I could go on. Those are two different things, right? I could have doubt, but not be at equipoise. So, I mean, Chapman is, do I have reasonable doubt? But that's clearly the Supreme Court has said that Brecht is a lot more than Chapman. And in fact, in Brecht, they use the language, even if there's a reasonable possibility of error, I think is the language you have to affirm. Yeah, and I guess it's a semantic thing. I'm saying equipoise, equipoise, meaning you can't really tell one way or the other. It's not a beyond a reasonable doubt thing, but you can't really tell one way or the other. Did this really affect their actual verdict in this case? And along these lines, as of course, you know, from your questions, you recognize the cardinal sin of this harmless error analysis is to start looking at whether there was sufficient evidence or whether there were sufficient evidence of official acts and things like that. That's not how it works. That's not what McDonnell says, what you need to look at. And that's really the mistake the district judge made and the government continues to do. Nobody disputes Mr. DeMora did a lot of official acts and votes. What I'm telling you is that the government stood up at the very end of the trial on the last day and they said to this jury, you don't have to tie it to votes. Votes are not part of the instructions. You can tie this to a phone call. And he did a lot of good things for the county. And the government told the jury, it doesn't matter if it was good for the county. The Coal Lake Project, the alternative agency, all these schemes, and I know there's a zillion and it's hard to keep track. But what people don't realize is these were good things. And Jimmy DeMora was setting up arrangements and phone calls for these things that were good for the county. And he drew the line in the sand and he wasn't going to trade a vote. People started getting upset that Jimmy DeMora wasn't playing the game. There's a quote on page eight of our reply. Maybe Jimmy's got to learn to play the game like Frank Russo does. So he wasn't crossing that line. Judge Larson, it looks like. So do you, I'm so little confused about the standards. Do you have the burden to show your client's entitlement to 2255 relief? Or because once you've established that there's a constitutional error, let's say that you've established that. Do we presume your entitlement to relief and the government has to displace that? Precisely. We have, we have an initial burden. It's the latter. Yes, we have an initial burden. Well, I think it's, I think it's the line of the Supreme Court cases all along these lines. It's either Brecht or Kodiakos or one of those seminal Supreme Court cases. What about the 2015 case in Davis, the most recent Supreme Court case on this where Justice Bryant must show actual prejudice, quoting Brecht. Wouldn't that mean the burden remains on you? That certainly sounds like it would, to be honest. And I think we meet that burden by leaps and bounds. My understanding of the case law is that once we establish this massive and even constitutional error that goes to the fundamental aspect of whether he was able to present a defense, the government needs to show that it didn't affect the outcome. But regardless of Mr. Mills, I think your time is up. So if you want to wrap up, unless Judge Merritt, do you have a question? I have a question. As I understand it, you're seeking a new trial. Is that right? Yes. The district court went about this on a count by count basis. Yes. And said this count is bad or this may be bad. And so denied a new trial. Right? Correct. Now, why is she wrong, the district court wrong, in not allowing you to have a new trial based on this count by count methodology that she adopted? Right, Judge Merritt. Here's why. The district court's analysis, count by count, did precisely that sort of cardinal sin of harmless error analysis where the district judge looked to see if there was any sufficient evidence of things like official acts that a hypothetical jury could conceivably tie things to. And the Supreme Court case law for 75 years, including McDonald's, shows us that's simply the entirely wrong way to look at it. You've got to look at whether the jury was affected by these errors. And as I emphasize... We have to analyze it count by count, correct? You don't just analyze overall. You look at it count by count to see if the jury was affected by the errors. I do agree with that. And I'll wrap up. But my point is, my overall way to look at this is, you look at these overall errors and the massive effects they would have on his intent, and then you go count by count, and you basically can see if you're the jury and you're told by the government he never disclosed, which is false, and then you're told all the lawful things he did are unlawful, you're going to convict him on every count all the way down, including 666, including wire fraud. And there's no way to say it was not affected by the errors. It was driven by the errors. And I probably better stop with my time. No, Mr. Mills, you get your full rebuttal time. But let me make sure Judge Larson and they just answered. I appreciate that. Thank you. Okay, thank you, Judge Larson. Do you have any additional? No, thank you. Okay, Mr. Mills, thank you very much. You will get your full rebuttal time. Thank you. Ms. Ford, you may proceed. Good morning, Your Honors. May it please the court, Laura Ford for the United States. Your Honors, in a nutshell, DeMar's arguing that there's a slight possibility that post-McDonald, while the jury did not rely on quintessential quid pro quo agreements, the exchange of things of value for both in convicting him, despite the fact that the jury instructions were very in line with the future of the McDonald decision and that there was overwhelming evidence of these quintessential votes. But before I address the evidence, I'd like to discuss the jury instructions because if this court indeed finds that there was no instructional errors, then there's no need to look at the evidence under the harmless error standard or look at the exclusion of evidence reports for cumulative error. Petitioner or appellant DeMar was convicted in 2012, approximately four years before the Supreme Court decided to... Excuse me, I'm having a problem understanding. Is there something wrong with the... Ms. Boardhouse, how's your internet connection? It looks like it's stable. Do you need me to call in instead? That's better. We're getting a lot of feedback. Okay. I can call in if that would be preferable. Actually, Judge Larson and I will mute ourselves and we'll see if that works. And then you can go ahead and we'll see if it works. Okay. Apologize, Your Honors. Mr. DeMar was convicted in 2012, approximately four years before the McDonald decision. The court did not have a benefit of a crystal ball to predict how the Supreme Court would later define official acts, but nevertheless read the tea leaves quite well by addressing McDonald's court concerns and narrowing the statutory definition of official acts found under Title 18, United States Code Section 201A3. The court, in addition to providing that instruction, said it could include decisions and actions that were generally expected of a public official. And then in that next sentence, modified and limited those definitions by providing the exact same two categories that McDonald prescribed by dividing official acts into formal influence, which it defined as both, which is very in line with the McDonald decision of recognizing that it's something that could be put on an agenda and tracked for progress and checked off as complete. And then the latter category, informal influence, which the court defined as a public official's influence on another public official. And that latter limiting instruction is consistent with McDonald's recognition that- And I'm sorry, I'm getting an echo. Ms. Ford, can you mute yours while I talk and then unmute it? Okay, thank you. So it's clearly your connection to see no, because when you mute, we don't, and I don't know why, but it seems like the instructions were over inclusive in my mind because they offer little guidance about when informal official influence qualifies as an official act. They try, it seems like they included trying to influence another official, but for pressure to count, it must be intended to prompt a decision or action after McDonald that amounts to a formal decision or action. And here it seems like the jury could very easily, and in fact, as Mr. Mills effectively pointed out, you all argued in closing that simply doing little things that would not qualify under McDonald qualified under those instructions. So why aren't they erroneous in a post-McDonald world? Your Honor, they're not erroneous because in order for a meeting or phone call to qualify, the jury would have to find that it was an attempt to influence the other public official. And the emphasis is on the defendant's conduct. But you concede post-McDonald that just setting up a meeting, even if you're pushing someone to do it, wouldn't qualify. Unless it was designed to provide advice with the intent to influence another public official to commit an official act, or it was designed to pressure another public official to commit an official act. And if you map what the court gave onto the meetings and phone calls, it still required that additional step of finding that the meeting or phone call would not qualify alone unless it was that improper attempt to influence another public official. Assuming you lose on this, I have two questions. One, to the extent the defendant forfeited arguing there was a violation of the constitutional right, did you forfeit the forfeiture? And my second question, then I'll move, is what standard do you think we apply to the review in 2255? Do you think it's wrecked? With respect to the standard of review, I don't think the government can really ever waive the standard of review. I think whatever standard of review always applies. I do agree that wrecked versus Abramson applies in this case. The defendant has to show that there is a high probability of a subsistence. Okay, so I understand that. But I wasn't asking if you waived the standard of review. I was asking if you forfeited. They did not argue that this amounted to a violation of a constitutional right. As I understand habeas, it has to amount to a violation of a constitutional right. You did not make the contrary argument. So if you forfeited the forfeiture on the first threshold question we must decide, which is whether there is a violation of a constitutional right, or can you not forfeit the forfeiture when it is a – because if we find the defendant forfeited it, the defendant loses because they don't establish a violation of a constitutional right. But in my understanding of your brief, you didn't argue that they failed to raise this. And so it seems to me you are, in effect, conceding they don't need to prove it. So go ahead and give me your answer to that. Your Honor, we addressed it from the view that it has to be a constitutional error in terms of meeting the Brecht v. Ibramson standard. I don't think that we can ever forfeit the argument because the error that he's complaining of has to rise to the level of the instructional error rendering the trial so infirm that it's fundamentally unfair, which rises to a constitutional concern. With respect to Brecht v. Ibramson, I think it has to – when you're looking at the evidence, it has to be a high probability that the error had a substantial injurious effect, not simply a slight effect. And we don't have a substantial injurious effect here. As the court noted, there are – counts 22 to 23 are supported solely by votes. Count 8 also, which is the Stonebridge team, also is supported solely by votes. So we know that this is the type of evidence that the jury was looking at. And voting undisputedly still – What about counts 12 and 13, which don't seem to involve official acts? They do involve official acts. Do we have to throw those out? No, Your Honor, because they still qualify under an informal influence theory because there is pressure on another public official to hire Zavarella's daughter, specifically with regard to Kelly, who wore many hats in this case. But Kelly didn't make the decision. The superintendent did. So Kelly's one step removed. He was on the school board, but the superintendent made the hiring decision. Correct, Your Honor. But, you know, we don't have to show that DeMora was actually successful with respect to an official act. We just have to show that there was an agreement to pressure or advise another public official. And Kelly was on the school board, and he in turn had significant influence over the superintendent and did, in fact, secure the hiring in that case. But also more directly, though, DeMora also asked Russo to hire Zavarella's neighbor  which I would say would also constitute pressuring another public official, which would be consistent with the McDonald decision. Beyond counts 8 and 22 to 23, there's overwhelming evidence of votes with respect to the votes to restore AA's funding on count three. The Stonebridge team, you have voting on construction projects, contracts in ways that benefited the bribers, Clean, Meeheiser, Plumper, and Melarano and Randazzo, voting on jobs and raises and funding to create jobs. So we have overwhelming evidence on all counts at issue, except for counts 12 to 13, which still are supported under an informal influence theory. And I think it would be improper to draw the conclusion. Ms. Ford, it sounds to me, so this is where I'm stumbling in figuring out what our job is. Assuming that the, let's assume that the instructions were not good. Okay, so that there is an error here. When we're trying to figure out whether the error was harmful or not harmful, it seems to me that what you're saying is, well, it's not harmful as long as for each count, there is some official act. If there's one official act in each count, then the instruction couldn't have done any harm. Your opponent is saying, no, no, no, that's not right because the jury could have, let's say there's one official act and one unofficial act in each one. The jury could have thought, well, he has a criminal intent with respect to the legal phone call, right? The phone call that is not an official act. And then they might've stopped. So if we're supposed to think about, so question one is, are we supposed to think about it that way? And question two is, if we do think about it that way, how do we know whether an error is harmful or harmless, given that we're not supposed to be applying the Chapman standard, we're supposed to be applying something that's tougher on the petitioner, but I guess not so tough as to be a preponderance standard. So help me think through how to think about harmlessness or harmfulness here. Yes, Your Honor. With respect to the applicable standard of review, we do not have to be absolutely certain that the jury relied on a valid theory. The question is not whether the jury could have stopped with respect to a meeting or phone call. We look at the evidence as a whole. And if there's overwhelming evidence, the overwhelming evidence of these votes. What if there's not? What if, for example, to take Judge Larson's point, there's two acts. One is a vote, clearly an official act, and one is not an official act. So we decide that you charge two things. The Voinovich thing, which we conclude is not an official act. Accept that for a minute. And the vote, which is an official act. Are we effectively at equipoise, in which case the defendant has to win? Or how do we decide that? We're not in equipoise, Your Honor, because we do not have to be absolutely certain that the jury relied on a legally valid theory. And the Supreme Court has answered that question for us in the Hedgepeth v. Polio case, where they said we don't have to be absolutely certain in an alternative theory case, because such a determination would appear to be a finding that no violation occurred at all, rather than that any error was harmless. Because if a theory has been found invalid on appeal, the jury always will have been permitted to find guilt on an invalid theory. Instead, the question is looking at the evidence as a whole, whether the instructional error rendered the entire trial so infirm that it's a fundamental error. We don't have that in this case. And with respect to the Voinovich, as the court points out, we do have a vote in that case, because DeMora voted or authorized funds for Russo to create a foreclosure department to provide the briber's daughter employment in that case. And the evidence was overwhelming. And I think what's critical is that DeMora doesn't contest that he was voting in the briber's favor. It's uncontested evidence, uncontroverted. And so we can't say, it would be off-conclusion to say that the jury was relying on something that was more minor when you have clear-cut evidence of this vote that still qualifies. And he certainly doesn't dispute that votes constitute a formal exercise of official action under the McDonald decision. And also, I would say that even with respect to the challenged evidence of meetings and phone calls, that that evidence would come in anyway, because it would constitute either a step in the direction of exercising a vote, or would go to his intent with respect to a corrupt agreement to provide favors in exchange for these things of value. For that reason, I think we look at the whole case in context and apply common sense, and it doesn't leave us with a grave doubt as to whether the interruption had a substantial or injurious effect on the jury. Ms. Ford, you concede, right, that we have to go through count by count. We have to go through count by count. I agree with that, Your Honor. We do have to go count by count. And when you look at that, you have almost nearly all the counts are supported by multiple votes in favor of the bribers. For that reason, Your Honor, we do not believe that any instructional error would have had a high probability of a substantial injurious effect in the jury's determination. Any risk with respect to an instructional error was minimal, if at all. Ms. Ford, you keep saying, is there a high probability that the instructional error had any effect? Is that the standard? And if so, where does that come from, high probability? Because I thought O'Neill said, huh, if you're in a tie, then the tie goes to the petitioner. So high probability sounds like he has to get us over the hurdle. If high probability is in the case law somewhere, I just want to know where, because the case law seems a little contradictory. Your Honor, I believe the high probability comes from the Hedrick versus Pulido case in applying the Kodiakus standard. I will agree that the case law is rather confusing because the Breck standard seems to suggest that the defendant has or the petitioner has the burden of proof. And then I think that, for instance, the O'Neill case seems to suggest that it's just the fact finder needs to determine whether or not it had a substantial or injurious effect. So I do believe that there is some confusion as to whether who has the burden. But regardless of who has the burden, I think the evidence, when you look at it as a whole, we don't look at it piecemeal as if it's a search warrant. We look at it as a whole and the overwhelming weight of the evidence here demonstrates that there wasn't a substantial and injurious effect because it would not make any sense for the jury to have relied on simply meetings and phone calls, which were relevant to his intent anyway, rather than the quintessential votes that were in this case. Before you wrap up, can I see if Judge Merritt has any questions? No, I'm fine. Okay. Ms. Ford, I think your time's about up, so you can wrap up if you could. Thank you, Your Honors. We'd ask that this court find that the instructions were proper under McDonnell, and even if they were not, that it did not have a substantial injurious effect that requires reversal. We'd also ask this court to find that there was no cumulative error with respect to the exclusion of the ethics reports, because if they were properly excluded under Rule 403, they certainly were not reversible errors. Unless this court has further questions, Your Honors, the government would respectfully request that this court affirm the district court's decision denying the more of Section 2255 relief. Thank you. Thank you. Mr. Mills? Yes, Your Honors. This case has a massive record, of course. It's something like 30,000 pages, but in some ways, all of these questions are answered by just five. And if you look at the government's own words on rebuttal and closing, 30468 is where it starts. 30468. It was a Thursday morning at 11 a.m., just like this argument, and it was the last day of trial, and the government decided that the last message they were going to give this jury over just five pages was, you don't have to tie it to votes. You can find all the informal, lawful things that we know now are lawful. Every phone call, every message, everything he did to assist anybody, you can find is criminal if you tie it to a thing of value. So all the lawful things Mr. DeMora did are unlawful. That is harmful. That taints the outcome. In fact, it drives the outcome on every count, because all of the counts require the jury to assess whether he acted lawfully or not. Then you add the fact that they're told the opposite of the truth about whether he disclosed, and that ties into the due process question. If you look, for example, in the reply brief, I pulled it up, page 25 at the end. I discussed this point, and I say, if there's going to be a trial of the century about Jimmy DeMora, it's got to meet minimum standards of due process. And I cite a Sixth Circuit case showing that due process was entirely violated here. Now, I think one of the reasons we didn't get into the due process question that much, it doesn't sound like the government even thought there was a question about whether we're raising a due process violation. They don't point it out. But at the end of the day, this is a due process violation. Jimmy DeMora could be found innocent by a jury if they knew the truth and they knew the law on all counts. So it's the most fundamental due process violation you could think of. I ended each brief saying we need a situation and a trial where a jury can finally assess whether he actually committed a crime. Mr. Mills, do you have anything else? Otherwise, I'll check if there's any questions. I'm inclined to end on that point and just remind the court. Mr. DeMora has no criminal history whatsoever. He's now in prison for a 28-year sentence. And if we have a proper trial where an attorney like me or someone else can explain to the jury the truth, they could find him not guilty on all counts. And I would ask this court to reverse the decision below. Judge Larson, do you have any questions? Judge Merritt, do you have any? No. Okay. Thank you, Mr. Mills. Thank you, Ms. Ford. The case will be submitted. We really appreciate you doing this via video and appreciate your thoughtful arguments.